UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>　　　　　Plaintiff/Counter-Defendant,<br><br>　v.<br><br>JOSEPH ZELIK<br><br>　　　　　Defendant/ Counter-Defendant<br>　　　　　/Third-Party Plaintiff, | Case No.: 1:19-CV-01805-JSR<br><br>**DEFENDANT JOSEPH ZELIK'S ANSWER TO PLAINTIFF GREAT AMERICAN INSUARANCE COMPANY'S AMENDED COMPLAINT WITH COUNTERCLAIMS AND <u>THIRD-PARTY COMPLAINT</u>** |
| JOSEPH ZELIK<br><br>　　　　　Defendant/ Counter-Defendant<br>　　　　　/Third-Party Plaintiff,<br><br>　v.<br><br>SECURE INSURE BROKERAGE INC. f/k/a INSURE SECURE INC.<br><br>　　　　　Third-Party Defendants | |

　　　　Defendant Joseph Zelik, through his undersigned counsel, as for his Answer and Counterclaims to the Amended Complaint of Plaintiff Great American Insurance Company ("Great American") and as his Third-Party Complaint against Secure Insure Brokerage Inc. f/k/a Insure Secure Inc. ("Insure Secure"), hereby alleges as follows:

<u>**ANSWER**</u>

　　　　1.　　　Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the Amended Complaint.

2.      Admits that Defendant is an individual with offices located in Brooklyn, NY and a personal residence in the State of New York, and denies the remainder of the allegations contained in Paragraph 2 of the Amended Complaint.

3.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the Amended Complaint, and respectfully refers all questions of law to the Court.

4.      Admits that Defendant is an individual with offices located in Brooklyn, NY and a personal residence in the State of New York, and denies the remainder of the allegations contained in Paragraph 4 of the Amended Complaint.

5.      Admits the allegations set forth in paragraph 5 of the Amended Complaint.

6.      The allegations set forth in paragraph 6 are legal conclusions, and respectfully refers all questions of law to the Court.

7.      The allegations set forth in paragraph 7 are legal conclusions, and respectfully refers all questions of law to the Court.

8.      Denies the allegations set forth in paragraph 8 of the Amended Complaint.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Amended Complaint.

10.     Denies the allegations set forth in paragraph 10 of the Amended Complaint.

11.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Amended Complaint.

12.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 of the Amended Complaint.

13.      Admits that Defendant was issued a Certificate of Coverage, Certificate Number 30025110, which provided $5 million of umbrella and excess liability insurance coverage for the period of September 22, 2014 to September 22, 2015 under Great American's Umbrella Policy, and denies knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 13 of the Amended Complaint.

14.      Admits the allegations set forth in paragraph 14 of the Amended Complaint.

15.      Admits the allegations set forth in paragraph 15 of the Amended Complaint.

16.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 of the Amended Complaint.

17.      Admits the allegations set forth in paragraph 17 of the Amended Complaint.

18.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18 of the Amended Complaint.

19.      Admits that the documents referenced say the words quoted in paragraph 19 of the Amended Complaint, and denies the remainder of the allegations contained in Paragraph 19 of the Amended Complaint.

20.      Admits that the documents referenced say the words quoted in paragraph 20 of the Amended Complaint, and denies the remainder of the allegations contained in Paragraph 20 of the Amended Complaint..

21.     Denies the allegations set forth in paragraph 21 of the Amended Complaint.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 22 of the Amended Complaint.

23.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 of the Amended Complaint.

24.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of the Amended Complaint.

25.     Admits that the primary policy sold by Allstate Insurance Company ("Allstate") to Defendant that covers the Hodge Lawsuit is a homeowners policy, and denies that Defendant expressly acknowledged, represented or warranted that he would obtain a commercial general liability policy, and denies knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 25 of the Amended Complaint.

26.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26 of the Amended Complaint.

27.     Refers the Court to the terms of the Allstate insurance policy referred to in paragraph 27 of the Amended Complaint, and denies the remaining allegations set forth in paragraph 27 of the Amended Complaint.

28.     Denies the allegations set forth in paragraph 28 of the Amended Complaint.

29.     Admits that Allstate sold Defendant homeowners policies for Bushwick Avenue and certain other properties owned by Defendant since September

22, 2011 through the present, and denies knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 29 of the Amended Complaint.

30.     Denies the allegations set forth in paragraph 30 of the Amended Complaint.

31.     Denies the allegations set forth in paragraph 31 of the Amended Complaint.

32.     Denies the allegations set forth in paragraph 32 of the Amended Complaint.

33.     Denies the allegations set forth in paragraph 33 of the Amended Complaint.

34.     Denies the allegations set forth in paragraph 34 of the Amended Complaint.

35.     Denies the allegations set forth in paragraph 35 of the Amended Complaint.

36.     Admits that 82 Ryerson St., 508 Rockaway, and 467 Bushwick were all covered under the Allstate Policy, and denies knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 36 of the Amended Complaint.

37.     Defendant repeats and incorporates by reference its Answer to paragraphs 1-36 of the Amended Complaint, as if the same were set forth at length herein.

38.     Denies the allegations set forth in paragraph 38 of the Amended Complaint.

39.     Denies the allegations set forth in paragraph 39 of the Amended Complaint.

40.     Denies the allegations set forth in paragraph 40 of the Amended Complaint.

41.     Denies the allegations set forth in paragraph 41 of the Amended Complaint.

42.     Defendant repeats and incorporates by reference its answer to paragraphs 1-41 of the Amended Complaint, as if the same were set forth at length herein.

43.     Denies the allegations set forth in paragraph 43 of the Amended Complaint.

44.     Denies the allegations set forth in paragraph 44 of the Amended Complaint.

45.     Denies the allegations set forth in paragraph 45 of the Amended Complaint.

46.     Defendant repeats and incorporates by reference its answer to paragraphs 1-45 of the Amended Complaint, as if the same were set forth at length herein.

47.     Denies the allegations set forth in paragraph 47 of the Amended Complaint.

48.     Denies the allegations set forth in paragraph 48 of the Amended Complaint.

49.     Denies the allegations set forth in paragraph 49 of the Amended Complaint.

50.     Denies the allegations set forth in paragraph 50 of the Amended Complaint.

51.     Defendant repeats and incorporates by reference its answer to paragraphs 1-50 of the Amended Complaint, as if the same were set forth at length herein.

52.     Denies the allegations set forth in paragraph 52 of the Amended Complaint.

53.     Denies the allegations set forth in paragraph 53 of the Amended Complaint.

54.     Denies the allegations set forth in paragraph 54 of the Amended Complaint.

55.     Defendant repeats and incorporates by reference its Answer to paragraphs 1-54 of the Amended Complaint, as if the same were set forth at length herein.

56.     Denies the allegations set forth in paragraph 56 of the Amended Complaint.

57.     Denies the allegations set forth in paragraph 57 of the Amended Complaint.

58.     Refers the Court to the terms of the Allstate Policy referred to in paragraph 58 of the Amended Complaint, and denies the remaining allegations set forth in paragraph 58 of the Amended Complaint.

59.     Denies the allegations set forth in paragraph 59 of the Amended Complaint.

60.     Denies the allegations set forth in paragraph 60 of the Amended Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

61.     There is no material difference in the type of coverage provided under the Allstate primary policy and the general liability policy that the Umbrella Policy purportedly requires as underlying insurance.

### Second Affirmative Defense

62.     Section 6.I of the Umbrella Policies provides that if requisite underlying insurance is not kept "in full force and effect[,]" Great American will "be liable to the same extent that [it] would have been had [Defendant] fully complied with the[] requirements."

63.     The Allstate Primary Policy provided coverage for the Hodges Lawsuit to the same extent that a general liability insurance policy would have.

### Third Affirmative Defense

64.     Certificates of Coverage are not capable of rescission.

### Fourth Affirmative Defense

65.     The Certificates of Coverage and Umbrella Policies are non-severable and therefore cannot be partially rescinded.

## Fifth Affirmative Defense

66.     Great American has failed to tender back any premiums and therefore cannot rescind the Certificates of Coverage or Umbrella Policies.

## Sixth Affirmative Defense

67.     The Certificates of Coverage and Umbrella Policies do not contain mutual mistakes and cannot be reformed.

## Seventh Affirmative Defense

68.     Defendant did not procure the Certificates of Coverage or Umbrella Policies through fraud and therefore they cannot be reformed.

## Eighth Affirmative Defense

69.     Since long before the Hodges claim, Great American knew or should have known the Allstate Primary Policies were homeowners policies.

70.     Great American failed to seek rescission expeditiously and cannot do so now.

## Ninth Affirmative Defense

71.     Great American has failed to state a claim upon which relief can be granted.

## Tenth Affirmative Defense

72.     Great American's claims are barred by the doctrines of waiver, laches, and/or estoppel.

## Eleventh Affirmative Defense

73.     Great American's allegations of fraud are not pleaded with sufficient particularity and thus fail.

**Twelfth Affirmative Defense**

74.    Great American's claims are barred because of Great American's breach of good faith, breach of fiduciary duty, and/or breach of loyalty owed to Defendant.

**Thirteenth Affirmative Defense**

75.    Great American's claims are barred by its unclean hands.

**Fourteenth Affirmative Defense**

76.    Defendant reserves the right to supplement or amend these affirmative defenses as further affirmative defenses are discovered.

WHEREFORE, Defendant prays this Court to dismiss Great American's Amended Complaint.

## COUNTERCLAIMS AGAINST GREAT AMERICAN INSURANCE COMPANY

### INTRODUCTION

1.    This is an insurance coverage dispute arising from Plaintiff/Counter-Defendant Great American Insurance Company's ("Great American") refusal to honor its contractual obligations to protect Defendant/Counter-Plaintiff/Third-Party Plaintiff Joseph Zelik from potential liability he faces arising from a slip-and-fall allegedly occurring on his property.

### THE PARTIES

2.    Mr. Zelik is an individual who resides in New York.  Mr. Zelik owns a collection of commercial and residential real estate in Brooklyn, New York.

3.    Upon information and belief, Great American is an insurance company incorporated under the laws of Ohio with its principle place of business in Ohio.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1367 because the claims asserted herein form part of the same case or controversy as those asserted in Great American's Amended Complaint.

5.      This Court has personal jurisdiction over Great American because Great American has assented to the jurisdiction of this Court by filing its Amended Complaint in this Court.

6.      This Court has personal jurisdiction over Great American because Great American operated, conducted, engaged in, and carried out business ventures in New York and there is a nexus between those ventures and this action.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

*Mr. Zelik Obtains Umbrella Liability Insurance from Great American*

8.      Mr. Zelik has been a member of Distinguished Properties Umbrella Managers, Inc. ("Distinguished Properties") since 2011.

9.      Distinguished Properties is a risk purchasing group that purchases insurance on behalf of its members by purchasing master policies and naming its members as "Named Insureds" on those policies.

10.     Mr. Zelik uses Distinguished Properties' services to obtain umbrella liability insurance for certain commercial and residential properties that he owns in Brooklyn, New York.

11.     Distinguished Properties issued Mr. Zelik a certificate of coverage, Certificate Number UM30025110 (the "Certificate of Coverage"), which stated that Mr. Zelik had $5,000,000 in umbrella coverage for 29 of his properties.  Such coverage was provided through a master umbrella insurance policy, Policy No. UM 3305282, that Distinguished Properties obtained from Great American (the "Umbrella Policy"). Attached as Exhibit A is a copy of the Certificate of Coverage, which incorporates the Umbrella Policy.

12.     The Certificate of Coverage listed the 29 properties that were covered by the Umbrella Policy.  Three of those properties were vacant lots.  One of those lots was located at 467 Bushwick Avenue, Brooklyn, New York ("467 Bushwick").

13.     The Certificate of Coverage stated that Mr. Zelik had coverage under the Umbrella Policy from September 22, 2014 to September 22, 2015.

*The Umbrella Policy*

14.     Pursuant to the Umbrella Policy, Great American promised to

> pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

Ex. A, Umbrella Policy, § I, as modified by Endorsement GAI 6434.

15.     Pursuant to the Umbrella Policy, "bodily injury" "means physical injury, sickness, or disease, including death or a person, "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person."  Ex. A, Umbrella Policy, § V.C.

12

16.     Pursuant to the Umbrella Policy, "occurrence" means "as respects 'bodily injury' . . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions[.]"  Ex. A, Umbrella Policy, § V.J.

17.     The Umbrella Policy's Policy Period is September 1, 2014 to September 1, 2016.  Ex. A, Umbrella Policy, Declarations.

18.     Mr. Zelik is an "Insured" under the Umbrella Policy pursuant to the "BROAD NAMED INSURED" Endorsement.  Ex. A, Umbrella Policy, Endorsement GAI 6011.

19.     Pursuant to the Umbrella Policy, the "Retained Limit" is the greater of:

1. the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underling Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

2. the amount stated in the Declarations as Self-Insured Retention . . . .

Ex. A, Umbrella Policy, § II.G.

20.     The Umbrella Policy states that there is no Self-Insured Retention. Ex. A, Declaration.

21.     The Schedule of Underlying Insurance attached to the Umbrella Policy states that the required underlying "Type of Coverage" is "General Liability" Coverage with the following limits: $1,000,000 Each Occurrence, $1,000,000 Personal & Advertising Injury INCLUDED Products/Completed Operations Aggregate, and $2,000,000 General Aggregate.

22.     The Umbrella Policy states that even if Mr. Zelik did not maintain the required underlying insurance, Great American promises to pay under the Umbrella

Policy, but only "to the same extent that [it] would have been [liable] had [Mr. Zelik] fully complied with the[] requirements."  Ex. A., Umbrella Policy, § 6.I.

23.     Mr. Zelik paid all premiums due under the Umbrella Policy and/or Certificate of Coverage

24.     Distinguished Properties paid all premiums due under the Umbrella Policy.

25.     Upon information and belief, Great American did not charge Mr. Zelik any additional premiums in exchange for its agreement to include coverage for the vacant lot at 467 Bushwick in any policy year since 2011.

26.     Mr. Zelik complied with all conditions of coverage under the Umbrella Policy.

### *Great American Denies Mr. Zelik's Claim for Coverage and Seeks to Rescind Coverage*

27.     On July 2, 2015, an individual, Kim Hodges, allegedly sustained an injury from a slip-and-fall at 467 Bushwick.

28.     Mr. Hodges subsequently brought a personal injury action against Mr. Zelik (the "Underlying Action").

29.     Mr. Zelik submitted a claim for the Underlying Action to his primary insurance company, Allstate Insurance Company ("Allstate").

30.     Allstate had sold Mr. Zelik a primary homeowners policy (the "Primary Policy"), which covered 467 Bushwick.

31.     The Primary Policy provided general liability insurance coverage with a policy limit of $1,000,000.

32.     Allstate agreed to cover Mr. Zelik under the Primary Policy for the Underlying Action.

33.     Allstate had sold Mr. Zelik a $1,000,000 homeowners policy covering 467 Bushwick every year since 2011.

34.     During the handling of a prior claim involving the same property, in 2013 Great American specifically communicated with Allstate regarding the primary layer of coverage underlying Great American's umbrella coverage.

35.     On April 18, 2018, Allstate notified Great American of the Underlying Action.

36.     On April 24, 2018, Great American responded telling Allstate to let it know if the situation changed in a way that would warrant Great American's involvement.

37.     In January 2019, Allstate determined that it would make the Primary Policy's limits of $1,000,000 available for resolution of the Underlying Action.

38.     On January 17, 2019, Allstate requested that Great American participate in the Underlying Action.

39.     On February 27, 2019, Great American sent a letter to Mr. Zelik denying coverage under the Umbrella Policy and stating that it intended to rescind the Umbrella Policy to the extent that it provided coverage for 467 Bushwick.

40.     Great American filed an action against Mr. Zelik in this Court, the United States District Court for the Southern District of New York, seeking a partial rescission or reformation of the Umbrella Policy.

41.     To date, Great American still has not agreed to provide coverage to Mr. Zelik under the Umbrella Policy.

42.     Mr. Zelik has incurred significant legal costs in defending the Rescission Action and in seeking to have Great American uphold its contractual obligations under the Umbrella Policy.

## COUNT I
## DECLARATORY JUDGMENT

43.     Mr. Zelik repeats and re-alleges the allegations of paragraphs ___ through ____ as if fully set forth herein.

44.     As a result of the Underlying Action, Mr. Zelik has incurred and will continue to incur loss and expenses of the type covered under the Umbrella Policy.

45.     Great American has breached its obligations under the Umbrella Policy, which names Mr. Zelik as an "Insured," by denying coverage and refusing to pay for the loss associated with the Underlying Action.

46.     Mr. Zelik is entitled to a declaration by this Court of his rights and the obligations of Great American under the Umbrella Policy with respect to loss associated with the Underlying Action.

47.     Mr. Zelik is entitled to a declaration that the Umbrella Policy is fully enforceable and is not capable of reformation or rescission, partial or otherwise.

48.     By reason of the foregoing, an actual justiciable controversy exists between Mr. Zelik and Great American regarding Great American's obligations to cover the subject insurance claims.

49.     Mr. Zelik thus seeks a judicial determination by this Court of Great American's obligations to cover Mr. Zelik for his loss associated with the Underlying

Action.  Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

50.     Mr. Zelik seeks his reasonable attorneys' fees in connection with the relief sought herein, which is an appropriate remedy here under *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12 (1979).

<u>**COUNT II**</u>
**BREACH OF CONTRACT**

51.     Mr. Zelik repeats and re-alleges the allegations of paragraphs ___ through ____ as if fully set forth herein.

52.     The Umbrella Policy constitutes a valid contract of insurance coverage between Mr. Zelik and Great American.

53.     Mr. Zelik has complied with all terms, conditions and prerequisites set forth in the Umbrella Policy, or has been excused from compliance with such terms, conditions, or prerequisites as a result of Great American's breach and/or other conduct.

54.     Mr. Zelik has incurred and will incur loss associated with the Underlying Action.

55.     Great American has refused to accept its obligations to provide Mr. Zelik with insurance coverage for his loss—in breach of the Umbrella Policy.

56.     As a result of said breach, Great American is liable to Mr. Zelik for damages relating to any losses suffered by Mr. Zelik as a result of the Underlying Action that are in excess of the Retained Limit.

57.     Great American is also liable for all other losses that Mr. Zelik may suffer in the future as a result of the Underlying Action, including consequential

17

damages, together with costs and disbursements of this Action, including, but not limited to, reasonable attorneys' fees and pre- and post-judgment interest.  Such a remedy is appropriate here under *Mighty Midgets*, 47 N.Y.2d 12.

58.    Mr. Zelik has incurred and continues to incur consequential damages—including but not limited to ongoing attorneys' fees and costs—due to Great American's wrongful, unjustified, and unreasonable conduct in bringing the Rescission Action.

## COUNT III
## ANTICIPATORY BREACH OF CONTRACT

59.    Mr. Zelik repeats and re-alleges the allegations of paragraphs __ through ___ as if fully set forth herein.

60.    The Umbrella Policy constitutes a valid contract of insurance coverage between Mr. Zelik and Great American.

61.    Mr. Zelik has complied with all terms, conditions and prerequisites set forth in the Umbrella Policy, or has been excused from compliance with such terms, conditions, or prerequisites as a result of Great American's breach and/or other conduct.

62.    Mr. Zelik has incurred and will incur loss associated with the Underlying Action.

63.    Great American has refused to accept its obligations to provide Mr. Zelik with insurance coverage for his loss—in breach of the Umbrella Policy.

64.    Great American owes and continues to owe Mr. Zelik a duty under the Umbrella Policy to provide him with coverage for the Underlying Action.  Great

American has refused to do so, committing an anticipatory breach of the Umbrella Policy with respect to the loss Mr. Zelik faces as a result of the Underlying Action.

65.     Great American's anticipatory repudiation of its duty to provide coverage to Mr. Zelik with respect to the Underlying Action was and continues to be unreasonable, was and is without justification, and was never waived or excused.

66.     Great American's denial of coverage constitutes a positive, unconditional, and unequivocal declaration of fixed purpose not to perform its coverage obligations under the Umbrella Policy in any event or at any time.

67.     As a result of said anticipatory breach, Great American is liable to Mr. Zelik for damages relating to any losses suffered by Mr. Zelik as a result of the Underlying Action that are presently in excess of the Retained Limit.

68.     Great American is also liable for all other losses that Mr. Zelik may suffer in the future as a result of the Underlying Action, including consequential damages, together with costs and disbursements of this Action, including, but not limited to, reasonable attorneys' fees and pre- and post-judgment interest.  Such a remedy is appropriate here under *Mighty Midgets*, 47 N.Y.2d 12.

69.     Mr. Zelik has incurred and continues to incur consequential damages—including but not limited to ongoing attorneys' fees and costs—due to Great American's wrongful, unjustified, and unreasonable conduct in bringing the Rescission Action.

**WHEREFORE**, Mr. Zelik requests judgment as follows:

(a) With respect to Count I: Declaring that, pursuant to the Umbrella Policy, Great American is obligated to cover the loss in excess of the

Retained Limit incurred by Mr. Zelik associated with the Underlying

Action and that the Umbrella Policy is not capable of reformation or

rescission, partial or otherwise.

(b) With respect to Counts II and III: Awarding money damages, pre- and

post-judgment interest, and consequential damages, including

attorneys' fees and costs, in an amount to be determined at trial.

### JURY TRIAL DEMANDED

Mr. Zelik hereby requests a trial by jury for these Counterclaims.

### THIRD-PARTY COMPLAINT AGAINST SECURE INSURE BROKERAGE, INC. f/k/a INSURE SECURE, INC.

### INTRODUCTION

1.      This action seeks damages arising out of the acts and omissions of

Third-Party Defendant Secure Insure Brokerage, Inc. f/k/a Insure Secure, Inc. ("Insure

Secure") in obtaining umbrella liability coverage for Third-Party Plaintiff Joseph Zelik.

2.      Insure Secure on behalf of Mr. Zelik purchased umbrella liability

coverage for Mr. Zelik from Great American Insurance Company ("Great American").

3.      The insurance was supposed to cover certain properties owned by

Mr. Zelik.

4.      Mr. Zelik was sued in connection with a slip-and-fall that allegedly

occurred on one of those properties.

5.      Mr. Zelik sought coverage for the lawsuit from Great American.

6.      Great American responded by seeking to rescind the coverage on

the grounds of material misrepresentations made in the application for insurance.

7.      Insure Secure was entirely responsible for completing the application of insurance on Mr. Zelik's behalf and accepted such responsibility.

8.      Insure Secure's alleged failure to properly submit Mr. Zelik's application of insurance constitutes negligence and breach of contract.

9.      As a result of said negligence and breach, Mr. Zelik faces significant liability for the lawsuit against him.  The insurance he instructed Insure Secure to purchase would have provided coverage for such liability—coverage that Great American now is refusing to provide.

## PARTIES

10.      Mr. Zelik is an individual who resides in New York.  Mr. Zelik owns a collection of commercial and residential real estate in Brooklyn, New York.

11.      Insure Secure is a New York corporation with its principle place of business in Brooklyn, New York.  Insure Secure is an insurance brokerage firm.

## JURISDICTION

12.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1367 because the claims asserted herein form part of the same case or controversy as those asserted in Great American's Amended Complaint.

13.      This Court has personal jurisdiction over Insure Secure because Insure Secure is a New York corporation with its principle place of business in Brooklyn, New York.

14.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

Mr. Zelik Seeks Umbrella Liability Coverage through Insure Secure

15.     On August 17, 2011, Mr. Zelik contacted Insure Secure seeking an umbrella liability policy with a $ 5 million limit of liability for certain commercial and residential properties that he owned.

16.     Mr. Zelik explained that he had $300,000 in underlying coverage and that his current umbrella policy could not be renewed because the insurance company that had provided him coverage no longer offered coverage for rental properties.

17.     On August 25, 2011, Insure Secure quoted Mr. Zelik a premium of $1,839.00 for an umbrella policy for 26 of Mr. Zelik's properties.

18.     The policy was from Great American, which Mr. Zelik was able to purchase by becoming a member of Distinguished Properties Umbrella Managers, Inc. ("Distinguished Properties").

19.     On September 21, 2011, Mr. Zelik instructed Insure Secure to purchase the umbrella policy on his behalf for the indicated premium.

20.     Mr. Zelik advised Insure Secure that 23 of his 26 properties were covered by primary commercial general liability policies.

21.     Mr. Zelik further advised Insure Secure that some properties—5810 15th Avenue, Brooklyn, New York and three vacant lots—were covered by a homeowners policy.  One of those lots was located at 467 Bushwick Avenue, Brooklyn, New York ("467 Bushwick").

22.     Upon information and belief, in order to place coverage, Insure Secure filled out an application for Distinguished Properties membership on Mr. Zelik's behalf.

23.     Upon information and belief, the application stated that all applicants must possess as underlying insurance Commercial General Liability coverage with limits of $1 million per occurrence / $ 2 million aggregate.

24.     Upon information and belief, Insure Secure wrote on the application that Mr. Zelik's underlying insurance complied with the requirements.

25.     Mr. Zelik did not review the application.

26.     Mr. Zelik was not asked by Insure Secure to review the application.

27.     Mr. Zelik relied on Insure Secure's insurance expertise in obtaining insurance on his behalf.

28.     On September 22, 2011, Mr. Zelik was provided a certificate of coverage from Distinguished Properties, showing that he had umbrella liability coverage from Great American for the period of September 22, 2011 to September 22, 2012.

29.     Every year following 2011 through the present, Mr. Zelik has relied on Insure Secure to renew his membership with Distinguished Properties in order to obtain insurance from Great American, including in 2014.

30.     Upon information and belief, every year, Insure Secure noted on the Distinguished Properties application that Mr. Zelik's underlying insurance complied with Great American's requirements, including in 2014.

23

31.     For every year prior to at least 2015-16 that Insure Secure submitted an application for insurance on Mr. Zelik's behalf, Mr. Zelik did not review the application.

32.     For every year prior to at least 2015-16 that Insure Secure submitted an application for insurance on Mr. Zelik's behalf, Mr. Zelik was not asked by Insure Secure to review the application.

33.     For every year that Insure Secure submitted an application for insurance on Mr. Zelik's behalf, Mr. Zelik relied on Insure Secure's insurance expertise in obtaining insurance on his behalf.

34.     Upon information and belief, in 2014, Insure Secure, as in years past and since, submitted an application to Distinguished Properties for umbrella liability insurance for Mr. Zelik.

35.     In 2014, Mr. Zelik sought to insure 29 properties.

36.     Three of those properties were the vacant lots for which Mr. Zelik sought coverage in 2011, including 467 Bushwick.

37.     Those policies still had a homeowners policy as underlying coverage.

38.     Upon information and belief, the 2014 application stated that all applicants must possess as underlying insurance Commercial General Liability coverage with limits of $1 million per occurrence / $ 2 million aggregate.

39.     Upon information and belief, Insure Secure wrote on the application that Mr. Zelik's underlying insurance complied with the requirements.

40.     In return for the application and premium, Distinguished Properties issued Mr. Zelik a certificate of coverage showing that he had umbrella liability coverage from Great American for the period of September 22, 2014 to September 22, 2015 (the "2014 Umbrella Policy")..

Great American Seeks to Rescind the 2014 Umbrella Policy and Others Based on Purported Misrepresentations in Mr. Zelik's Applications for Insurance

41.     On July 2, 2015, an individual, Kim Hodges, allegedly sustained an injury from a slip-and-fall at 467 Bushwick.

42.     Mr. Hodges subsequently brought a personal injury action against Mr. Zelik (the "Underlying Action").

43.     467 Bushwick was covered by a primary homeowners policy that was sold to Mr. Zelik by Allstate Insurance Company ("Allstate").

44.     Mr. Zelik notified Allstate of the Underlying Action.

45.     Allstate provided primary coverage to Mr. Zelik for the Underlying Action.

46.     On January 17, 2019, Allstate informed Great American that Mr. Zelik's liability in the Underlying Action could exceed the limits of the Allstate primary policy and requested that Great American participate in settlements pertaining to the Underlying Action, as it was required to do under the 2014 Umbrella Policy.

47.     On February 27, 2019, Great American sent a letter to Mr. Zelik denying coverage under the 2014 Umbrella Policy for the Underlying Action.

48.     Upon information and belief, Great American stated that it had recently learned that the underlying insurance for 467 Bushwick was a homeowners

policy, as opposed to the commercial general liability policy that was required per the application for insurance.

49.     Great American stated that there were material misrepresentations in the applications for insurance—namely, as indicated above, that the underlying insurance for some of Mr. Zelik's properties was through a homeowners policy rather than a commercial general liability policy.

50.     Great American filed an action to reform or partially rescind the 2014 Umbrella Policy (the "Rescission Action").

51.     Mr. Zelik faces potential liability in the Underlying Action because Great American has refused to pay based on purported misrepresentations in the applications for insurance.

52.     The 2014 Umbrella Policy or any other umbrella liability policy that Mr. Zelik instructed Insure Secure to obtain on his behalf would have provided coverage for the Underlying Action.

53.     Mr. Zelik has incurred significant fees in defending the Rescission Action and in attempting to have Great American provide coverage for the Underlying Action

## COUNT I
## BROKER MALPRACTICE/NEGLIGENCE

54.     Mr. Zelik repeats and re-alleges the allegations of paragraphs ___ through ____ as if fully set forth herein.

55.     When an insurance agent/broker undertakes to procure insurance, it owes a duty to act with reasonable care, skill and diligence, including fulfilling all

reasonable instructions, and properly and accurately preparing and submitting all forms and applications associated with the procurement of insurance.

56.     Insure Secure agreed to provide insurance brokering services with the requisite professional skill, care and diligence, for the benefit of Mr. Zelik, in exchange for valuable consideration paid by Mr. Zelik to Insure Secure.

57.      Insure Secure had a duty to use reasonable skill and care in providing advisory and insurance brokering services to Mr. Zelik.

58.     Insure Secure had a duty to accurately and truthfully prepare all documents, forms and applications that it submitted on behalf of Mr. Zelik.

59.     If Great American's allegations are correct, then Insure Secure breached said duties by stating on Mr. Zelik's applications for insurance with Great American that all of his underlying coverage for all of his properties was through commercial general liability policies where 467 Bushwick and other properties had underlying coverage through homeowners policies.

60.     Mr. Zelik relied upon Insure Secure to procure umbrella liability coverage for all of his properties, including reliance upon Insure Secure to accurately and truthfully prepare all applications for such coverage.

61.     Great American has based its denial of coverage on a purported misrepresentations as to underlying insurance by Mr. Zelik on his applications for umbrella liability coverage.

62.     Accordingly, to the extent there was any purported misrepresentation on any of the Distinguished Properties applications prepared and

submitted by Insure Secure, such misrepresentation was caused solely by the negligence of Insure Secure and not Mr. Zelik.

63.     Any such purported misrepresentation made by Insure Secure on the applications constitutes a failure by Insure Secure to satisfy its duties and obligations to Mr. Zelik and constitutes negligence for which Insure Secure is liable to Mr. Zelik.

64.     As a result of Insure Secure's negligence and breach of its duty of care owed to Mr. Zelik, Mr. Zelik has suffered, and continues to suffer damages, including any uninsured losses arising out of the Underlying Action, as well as consequential damages, including attorneys' fees in defending the Rescission Action and seeking coverage from Great American.

**<u>COUNT II</u>**
**BREACH OF CONTRACT**

65.     Mr. Zelik repeats and re-alleges the allegations of paragraphs ___ through ____ as if fully set forth herein.

66.     Insure Secure agreed to provide advisory and insurance brokerage services with requisite skill and care, for the benefit of Mr. Zelik, in exchange for valuable consideration paid by Mr. Zelik to Insure Secure.

67.     The ongoing relationship and course of dealing between Mr. Zelik and Insure Secure constituted a contractual relationship between Mr. Zelik and Insure Secure.

68.     Mr. Zelik has performed all conditions, covenants, and promises which he was required to perform pursuant to its contractual relationship with Insure Secure.

28

69.     Insure Secure agreed to purchase valid umbrella liability coverage for Mr. Zelik for 467 Bushwick from 2011 through the present.

70.     Mr. Zelik paid Insure Secure a commission to purchase valid umbrella liability coverage for Mr. Zelik for 467 Bushwick from 2011 through the present.

71.     If Great American succeeds in the Rescission Action, then Insure Secure breached its contractual obligations to Mr. Zelik by failing to purchase valid umbrella liability coverage for Mr. Zelik for 467 Bushwick from 2011 through the present.

72.     As a direct and proximate result of Insure Secure's breach of contract, Mr. Zelik faces significant liability from the Underlying Action that he would otherwise would not have had Insure Secure procured the insurance that Mr. Zelik instructed it to purchase.

73.     As a direct and proximate result of Insure Secure's breach of contract, Mr. Zelik has incurred significant legal fees in defending the Rescission Action and seeking to have Great American provide coverage for the Underlying Action.

WHEREFORE, Mr. Zelik respectfully requests judgment against Insure Secure with respect Counts I & II: Awarding money damages, pre- and post-judgment interest, and consequential damages, including attorneys' fees and costs, in an amount to be determined at trial.

## JURY TRIAL DEMANDED

Mr. Zelik hereby requests a trial by jury for this Third Party Complaint.


Dated:  July 18, 2019

ANDERSON KILL P.C.

By:   /s/ Marshall Gilinsky
Marshall Gilinsky, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 278-1000
Fax:  (212) 278-1733
mgilinsky@andersonkill.com
gbrown@andersonkill.com

*Attorneys for Defendant*