UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT AMERICAN INSURANCE
COMPANY,
    Plaintiff/Counter-
    Defendant,

    -against-

JOSEPH ZELIK,
    Defendant/Counter-
    Plaintiff/Third-Party
    Plaintiff.

    -against-

SECURE INSURE BROKERAGE,
INC.,
    Third-Party Defendant

19-cv-1805 (JSR)

MEMORANDUM ORDER

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 11/6/20 |

JED S. RAKOFF, U.S.D.J.

I. Overview

This case involves a dispute over whether an umbrella-
policy insurance carrier, Great American Insurance Co. ("GAIC"),
must cover losses arising from an individual named Kim Hodges
tripping and falling in front of a vacant lot (the "Hodges
incident") owned by Joseph Zelik, a real estate investor. Zelik
had an umbrella insurance policy (the "Umbrella Insurance
Policy") issued by GAIC covering the lot at the time of the
incident. Zelik obtained this policy through Secure Insure
("Secure"), an insurance broker.

1

GAIC sues for rescission or reformation of the Umbrella

Insurance policy based on alleged material misrepresentations on

Zelik's insurance application. In the alternative, GAIC seeks a

decision from the Court finding that the policy as written does

not cover the Hodges incident. Zelik counter-claims for breach

of contract and a declaratory judgment that GAIC must cover the

Hodges incident. Zelik has also filed a third-party complaint

against Secure for negligence.

Now before the Court are GAIC's and Zelik's cross-motions

for summary judgment, and Secure's motion for summary judgment

against Zelik. For the reasons below, the Court denies summary

judgment on all but one claim.

## II. Undisputed Material Facts

Defendant/Counter-Plaintiff/Third-Party Plaintiff, Joseph

Zelik is a real estate investor, broker, and manager. In 2011,

Zelik first began insuring some of his properties under a

commercial real estate umbrella liability insurance program for

which Plaintiff/Counter-Defendant Great American Insurance

Company was the lead insurer. Zelik obtained this umbrella

insurance coverage through Third-Party Defendant Secure Insure

Brokerage, Inc., an insurance brokerage firm.

As part of the application process for the umbrella

insurance policy that Secure obtained for Zelik, Zelik sent

Secure a spreadsheet of twenty-seven properties Zelik wanted

2

insured under the policy. Zelik's Resp. to Secure's Local Rule
56.1 Statement of Material Facts ("Zelik Resp. Secure SMF") ¶
18. The spreadsheet included descriptions of the properties as
well as the underlying carrier and policy number per location.
JA Exh. 59-60. Secure provided GAIC with the same spreadsheet.
Zelik Resp. Secure SMF ¶ 29. The spreadsheet indicated that the
underlying carrier for a number of these properties was
"Allstate." JA Exh. 60. All properties for which the underlying
insurance policy was listed as "Allstate" had an underlying
homeowner's insurance policy. JA Exh. 53.

The initial umbrella insurance application, which was
signed by Secure on Zelik's behalf, checked a box in the
affirmative next to the following statement: "I acknowledge that
I have read the above and agree that all primary insurance
either currently comply or will be placed and/or amended to be
in compliance with the underlying requirements prior to binding
the Umbrella Insurance." Joint App'x in Support of the Parties'
Respective Summary Judgment Motions ("JA") Exh. 16 at GAIC 114,
ECF No. 41-43. The application earlier states that it
"require[s] all underlying insurance" to have underlying
"Commercial General Liability" ("CGL") insurance with a limit of
no less than $1,000,000 per occurrence, $2,000,000 general
aggregate per location, and $1,000,000 personal and advertising
injury. Id. Exh. 7 at GAIC 114. Neither Zelik nor Secure altered

3

the Allstate homeowner's insurance underlying some of the properties before binding the Umbrella Insurance Policy in September 2011.

Shortly after the insurance policy was bound, GAIC issued a Certificate of Coverage and provided Zelik with $5 million of commercial umbrella coverage under the Umbrella Insurance Policy. Zelik Resp. Secure SMF ¶ 67-68. The policy listed all properties listed in the spreadsheet, including those covered under the Allstate homeowner's policy. The 2011 Certificate of Coverage was repeatedly and continuously renewed through September 22, 2019. Zelik's Resp. to GAIC's Local Rule 56.1 Statement of Undisputed Material Facts ("Zelik Resp. GAIC SMF") ¶ 71, ECF No. 48. As part of these renewals, Secure submitted renewal applications on behalf of Zelik that contained the same affirmation of underlying insurance as the first application. Id. ¶¶ 74-75.

One of the properties listed as covered in the Umbrella Insurance Policy was a vacant lot at 467 Bushwick Avenue. This vacant lot had the Allstate homeowner's insurance policy as its underlying insurance coverage. In 2019, an individual named Kim Hodges tripped and fell in front of this vacant lot, incurring significant injuries. Allstate provided Zelik with defense in a personal injury lawsuit Hodges subsequently filed against him in New York State court. Zelik Resp. GAIC SMF ¶ 88. Allstate

4

notified GAIC of the lawsuit in April 2018. Id. ¶ 92. On January 17, 2019, Allstate requested that GAIC participate in the lawsuit. Id. ¶ 92. On January 18, 2019, Allstate advised GAIC that it had tendered the one million dollar limit of its primary policy to settle the Hodges lawsuit, for which the settlement demand was in excess of the one million dollar primary limit. Id. ¶ 93.

Around January 25, 2019 GAIC began investigating this insurance claim, during which time it alleges that it first learned that the underlying primary policy for 467 Bushwick Avenue was a homeowner's policy. Id. ¶ 95. In February, GAIC advised Zelik that based on material misrepresentations made in application for the Umbrella Insurance Policy, GAIC would be seeking to rescind the policy. Id. ¶ 97. GAIC then filed this lawsuit against Zelik. Zelik filed a counter-claim and filed a third-party complaint against Secure.

III. Summary Judgment Standard

"Summary judgment is proper when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); see also Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

5

of law."). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. "Genuine issues of fact are not created by conclusory allegations." Heublein, 996 F.2d at 1461.

## IV. Summary Judgment Motions on Claims Between Zelik and GAIC

GAIC moves for summary judgment seeking rescission of the Umbrella Insurance Policy, reformation of the policy, or a ruling that there can be no coverage for Zelik under the 2014-2015 Umbrella Insurance Policy as written for the lawsuit filed by Kim Hodges against him. Zelik cross-moves for summary judgment against GAIC on its rescission and reformation claims. Further, Zelik seeks a ruling that the Umbrella Insurance Policy covers the Hodges incident and that GAIC must pay the reasonable attorneys' fees Zelik incurred while litigating this action. Secure, as a third-party defendant, briefed a number of arguments in support of Zelik's summary judgment motion.

### a. Rescission

GAIC first argues that the Court should partially rescind each GAIC Umbrella Insurance Policy as to the locations where Zelik had an underlying homeowner's insurance policy. Zelik and

6

Secure assert numerous arguments about why this claim fails as a matter of law, and why the Court should instead grant summary judgment against GAIC. Under New York law, "an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations." Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp., 540 F.3d 133, 139 (2d Cir. 2008). Because a material dispute remains as to whether Zelik's misrepresentation was material, the Court denies all motions for summary judgment on this question.

i.    Material Misrepresentation

The parties first dispute whether the fact that Secure, on behalf of Zelik, checked a box on the insurance application stating that "I acknowledge that I have read the above and agree that all primary insurance either currently comply or will be placed and/or amended to be in compliance with the underlying requirements prior to binding the Umbrella Insurance" constitutes a material misrepresentation. "Whether there has been a misrepresentation and the materiality of that misrepresentation are usually questions of fact for the jury; however, where the evidence concerning a material misrepresentation 'is clear and substantially uncontradicted, the matter is one of law for the court to determine." Mutual Benefit Life Ins. Co. v. Morley, 722 F.Supp. 1048, 1051 (S.D.N.Y.1989). Here, the evidence is not clear and

7

substantially uncontradicted on the question of materiality, so it remains a question for the jury.

As an initial matter, there is clear and substantially uncontradicted evidence that Zelik made a misrepresentation. New York courts have long recognized that an uncontradicted false answer on an application for insurance is a misrepresentation. Travelers' Ins. Co. v. Pomerantz, 246 N.Y. 63, 66-67, 158 N.E. 21 (1927). By checking a box through Secure stating that he had insurance in compliance with underlying requirements of the Umbrella Insurance Policy, Zelik made such an uncontradicted false answer. The affirmation specifically indicated that Zelik needed underlying "Commercial General Liability" insurance, JA Ex. 16, GAIC 114, and Zelik had only homeowners' insurance.

Zelik fails to effectively dispute this evidence that he made a misrepresentation. First, he argues that he did not make a misrepresentation because the text of the Umbrella Insurance Policy only required "general liability" coverage, and that Zelik in fact had such coverage through Allstate. Zelik's Mem. of Law in Opp. To Pl. GAIC's Mot. for Summary Judgment ("Zelik Opp. GAIC Mem.") 11, ECF No. 47. Zelik, however, only points to a part of the Allstate policy that indicates he has "Family Liability" protection, which does not mention "general liability." Zelik fails to explain how "family liability" insurance is equivalent to CGL insurance. Second, Zelik argues

8

that because GAIC knew that Zelik's primary coverage was through
Allstate, which primarily provides homeowner's insurance, it
could have raised the misrepresentation with Zelik at the time.
Id. at 10. This claim, however, does not make the representation
any less false.

However, even though there is clear and substantially
uncontroverted evidence of a misrepresentation, it is not clear
whether this misrepresentation was material. "A fact is material
so as to void ab initio an insurance contract if, had it been
revealed, the insurer or reinsurer would either not have issued
the policy or would have only at a higher premium." Christiania
Gen'l Ins. Corp. v. Great Am. Ins. Co., 979 F.2d 268, 278 (2d
Cir. 1992). In other words, the "insurer need not prove that it
would not have issued any policy at all, but that the policy in
question would not have been issued." Aetna Cas. & Sur. Co. v.
Retail Local 906, 921 F. Supp. 122, 131 (E.D.N.Y. 1996), aff'd,
106 F.3d 34 (2d Cir. 1997).

Here, both parties have adduced evidence sufficient to
raise a dispute as to whether the misrepresentation was
material. The very fact that GAIC required an affirmation that
the underlying insurance policy was in compliance constitutes
evidence that the nature of the underlying insurance policy was
material. Further a representative of GAIC testified that such
affirmations are important to its decision whether to issue a

9

policy, JA, Ex. 7, 131. Zelik, however, has adduced evidence suggesting that the misrepresentation was not material. For example, Zelik points to a clause in the Umbrella Insurance Policy stating that if an insured fails to maintain compliant underlying coverage, GAIC "will only be liable to the same extent that [it] would have been had [the insured] fully complied with" the policy requirements. 2014 Umbrella Policy, J. Ex. 29, at GAIC 1344, § V.I. Taken in the light most favorable to Zelik, this clause suggests that the nature of the underlying insurance, and perhaps even its existence, was immaterial to GAIC's decision to issue the Umbrella Insurance Policy.

Given GAIC and Zelik have adduced evidence demonstrating that a dispute remains as whether Zelik's misrepresentation was material, neither party can succeed on its summary judgment motion. None of the remaining arguments about why GAIC supposedly cannot obtain rescission as a matter of law changes this outcome, as detailed next.

ii. Reliance

Secure argues that GAIC has not demonstrated "justifiable reliance" sufficient to support a rescission claim and that summary judgment is thus warranted in Zelik's favor. Secure, however, offers no relevant case law requiring such "justifiable reliance" in the context of a rescission claim, citing instead cases from the fraudulent misrepresentation context. See, e.g.,

Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173 (2011);

Morse/Diesel, Inc. v. Fid. & Deposit Co., 715 F. Supp. 578, 585

(S.D.N.Y. 1989); Danann Realty Corp. v. Harris, 5 N.Y.2d 317

(1959). Perhaps recognizing that no such "justifiable reliance"

requirement exists in the context of a rescission claim, Secure

offers an entirely circular argument that the absence of a

"justifiable reliance" requirement violates both the Federal and

State Constitutions. Not requiring GAIC to make a prima facie

showing of "justifiable reliance," Secure argues, imposes an

unconstitutional "Irrebuttable Presumption" that there was

justifiable reliance. Failing to require a prima facie element

for a claim, however, does not constitute an irrebuttable

presumption that such an element has been met; it is simply an

irrelevancy. Secure's argument thus fails.

### iii. Partial Rescission

Zelik's and Secure's next argument, that the Court does not

have the power to grant GAIC the rescission remedy it seeks, is

no more availing. In this case, GAIC does not seek full

rescission of the insurance contract, but instead partial

rescission as to those properties that had underlying

homeowner's insurance policies. Zelik and Secure argue that such

partial rescission is improper. Because a dispute remains as to

whether the Umbrella Insurance Policy is divisible, the Court

cannot yet decide whether partial rescission is proper.

11

A contract may only be partially rescinded if it is divisible. See Ripley v. Int'l Railways of Cent. Am., 8 N.Y. 2d 430, 437 (1960). Whether a contract is divisible turns on whether the parties intended "all of [the contract's] parts and the consideration therefore [to] be common each to the other and interdependent" or "susceptible of division and apportionment." Garcia v. Government Employers Ins. Co., 151 A.D.3d 1020, 1022, 58 N.Y.S. 428 (2d Dept. 2017) (citations omitted). Generally, New York courts find that an insurance policy is divisible when it insures "different classes of property, each separately valued . . . for distinct amounts, even if the premium for the aggregate amount is paid in gross." Nationwide Mut. Ins. Co. v. Mason, 37 A.D.2d 15, 18-19 (2d Dep't 1971).

Here, both sides have adduced evidence demonstrating that a factual dispute remains as to whether the Umbrella Insurance Policy is divisible. On the one hand, GAIC has adduced evidence that each certificate of insurance identified each of the 30 insured locations, JA Ex. 21, GAIC014930-014939, and that GAIC broke down premiums by location in invoices sent to Zelik. JA Ex. 65. Taken in the light most favorable to GAIC, these facts suggest that the insurance policy was divisible. On the other hand, Zelik has adduced evidence that the insurance policy was not divisible. Primarily, Zelik points out that GAIC did not charge any premium for the vacant lot at 467 Bushwick Avenue, JA

12

Ex. 65, at GAIC 10436, and that GAIC does not always separately value low-risk properties such as parking lots. Decarlo Dep., JA Ex. 7, at 45. Taken in the light most favorable to Zelik, this suggests that the parties intended coverage of vacant lots such a 467 Bushwick Avenue to be inseparable from the larger insurance contract.[1]

Because both parties have adduced evidence demonstrating that a dispute exists as to whether the Umbrella Insurance Policy was divisible, the Court does not grant summary judgment on the ground that partial rescission is an inappropriate remedy.

### iv. Timeliness of Rescission

Secure's and Zelik's argument that the rescission claim was untimely also fails to warrant summary judgment. Under New York law, a party must seek rescission expeditiously after learning of the grounds on which the claim for rescission is based. Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank, 850 F. Supp. 1199, 1211 (S.D.N.Y. 1994). Zelik

_____

[1] GAIC does not dispute that it did not charge an extra premium for vacant lots, but says that this fact does not indicate that the policy was divisible because "[t]hese vacant lots were included on the primary Allstate Homeowner's Policy for 5810 15th Avenue, an individual policy GAIC is to rescind." GAIC Mem. of Law in Opp. to Zelik and Secure's Mots. for Summary Judgment ("GAIC Opp. Zelik & Secure") 19, ECF No. 53. However, taken in the light most favorable to Zelik, this actually confirms that GAIC sometimes insured separate properties together as a single · risk.

13

claims that GAIC had adequate notice that Zelik had improper
underlying insurance for up to seven years, precluding its
rescission claim here. GAIC argues that it only became aware of
the underlying insurance problem due to the Hodges claim, and
that its claim for rescission is thus timely.

A party seeking rescission has the burden of proving that
it sought to rescind a policy "promptly after discovery" of a
misrepresentation. Id. To have discovered a misrepresentation, a
party "need not have '[f]ull and complete knowledge'; rather,
[it] need only 'such notice of the facts as would impel a
reasonable man in his position to make inquiry.'" United States
Liab. Ins. Co. v. WW Trading Co., No. 16CV3498CBAJO, 2018 WL
6344641, at *9 (E.D.N.Y. Sept. 28, 2018) (quoting Banque Arabe,
850 F. Supp. at 1211). In other words, the party seeking
rescission only needs constructive knowledge of the
misrepresentation.

Zelik argues that a number of communications put GAIC on
constructive notice of his misrepresentation that certain
properties were covered by commercial rather than homeowner's
insurance policies. First, the fact that GIAC knew that the
underlying policies were from Allstate should have put GAIC on
notice because 95% of Allstate's business involves personal
lines of insurance, rather than commercial lines. Mem. of Law in
Support of Zelik's Mot. for Summary Judgment ("Zelik SJ Mem.")

14

35, ECF No. 32. More importantly, in 2012 a different person slipped on the sidewalk next to 467 Bushwick Avenue, causing Allstate, through Secure, to alert GAIC to a possible insurance claim. JA Exh. 78, at GAIC 1617. GAIC confirmed receipt of the communication, which included the underlying policy number, but conducted no inquiry about the type of coverage provided under the Allstate policy. Instead, GAIC demanded that Allstate's counsel attempt to settle the case within the limits of the Allstate policy. This constitutes some evidence that GAIC was on notice as early as 2013, and thus its rescission claim would be untimely.

Zelik's evidence, however, is not enough to allow summary judgment against GAIC. GAIC has adduced evidence sufficient to allow a jury to find that it was not on constructive notice of Zelik's misrepresentation prior to the Hodges claim. Most importantly, GAIC relies on the fact that Zelik, through his broker, repeatedly affirmed that his underlying insurance was in compliance with the Umbrella Insurance Policy. Some case law supports the proposition that insurers may reasonably rely on such affirmations without further investigation. See, e.g., Skinner v. Norman, 165 N.Y. 565, 571, 59 N.E. 309, 310 (1901) ("The [insurance] company may rely on the presumption that the insured has stated all the material facts, and, as a rule, is not bound to make inquiries."). Thus, a reasonable jury could

15

find that GAIC was not on constructive notice of Zelik's misrepresentation prior to the 2019 filing of the Hodges lawsuit, and that its claim was thus timely.

Zelik and Secure's alternative theories of why GAIC's rescission claim is untimely are no more successful, at least at the summary judgment stage. Zelik, for example, asserts that the rescission claim is untimely under the doctrine of laches. Laches, however, similarly requires a showing that GAIC was on constructive notice of Zelik's misrepresentation, a showing Zelik cannot prove to a summary judgment standard. Bakalar v. Vavra, 819 F. Supp. 2d 293, 303 (S.D.N.Y. 2011), aff'd, 500 F. App'x 6 (2d Cir. 2012).

Secure also argues that the statute of limitations bars GAIC's claim for rescission. However, neither Zelik nor Secure raised this defense in their answers or before summary judgment, and thus waived it. See Wade v. Orange Cty. Sheriff's Office, 844 F.2d 951, 955 (2d Cir. 1988); Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1155 (2d Cir. 1968).

v.   Equity

Finally, Zelik and Secure fail to demonstrate that GAIC is not entitled to rescission because the equities weigh against such a remedy. As a general matter "[a] court of equity is always reluctant to rescind, unless the parties can be put back in statu[s] quo" or "the clearest and strongest equity

16

imperatively demands it." Scarangella v. Grp. Health Inc., No. 05CIV5298 (RJS), 2009 WL 764454, at *18 (S.D.N.Y. Mar. 24, 2009). Zelik and Secure argue that the equities do not favor rescission for a number of reasons, including that GAIC is in no worse position than it would have been if Zelik had an underlying CGL policy, that Zelik cannot be put back in the same position as he was before the policy, and that GAIC should have been aware that Zelik had the incorrect underlying policy earlier. As discussed above, however, many facts that would underlie the Court's determination of where the equities lie in this case remain in dispute. The Court thus declines to determine whether equity bars granting rescission in this case "unless and until the factual disputes in the record are resolved." Id. All parties' summary judgment motions on the question of rescission are thus denied.

b. Reformation

Failing its rescission claim, GAIC next moves for summary judgment on its reformation claim. GAIC asks the Court to reform the Umbrella Insurance Policy to remove six properties, including 467 Bushwick Avenue, as insured locations during those time frames when they were improperly insured under primary homeowner's policies. GAIC argues that because both parties entered into the Umbrella Insurance Policy under the mutually mistaken belief that the properties in question had underlying

17

CGL insurance, reformation is warranted. Zelik and Secure argue that there has been no such mutual mistake, and that summary judgment is instead warranted against GAIC on its reformation claim. The Court agrees with Zelik and Secure that GAIC cannot succeed on its reformation claim, and grants summary judgment against GAIC dismissing this claim.

The remedy of reformation is designed for the narrow circumstance in which "it clearly and convincingly appears that [a] contract, as written, does not embody the true agreement as mutually intended." Ross v. Food Specialties, Inc., 6 N.Y.2d 336, 341 (1959). "A claim for reformation of a written agreement must be grounded upon either mutual mistake or fraudulently induced unilateral mistake" Greater N.Y. Mut. Ins. Co. v. United States Underwriters Ins. Co., 36 A.D.3d 441, 827 N.Y.S.2d 147 (1st Dept. 2007). To succeed under a mutual mistake theory, which is what GAIC asserts here, a party must establish by "clear, positive and convincing evidence" that because of a mutual mistake, the agreement does not accurately express the parties' intentions. Amend v. Hurley, 293 N.Y. 587, 595, 59 N.E.2d 416 (1944) (emphasis deleted). In other words, a party must demonstrate "not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." George Backer Mgmt. Corp. v. Acme Quilting Co., 46 N.Y.2d 211, 219, 385 N.E.2d 1062 (1978).

18

Here, GAIC fails to offer clear and convincing evidence, even taken in the light most favorable to it, of a mutual mistake warranting the reformation it seeks. While GAIC has adduced evidence that it entered into the Umbrella Insurance Policy contract under the mistaken belief that all the properties had underlying CGL policies, it has not shown that this mistake was mutual. Indeed, GAIC's own brief asserts that Zelik "did not know the difference between homeowners and other policies, was unfamiliar with the term commercial general liability, and relied upon his broker to know what to obtain." Mem. of Law in Support of Pl. GAIC's Mot. for Summary Judgment ("GAIC SJ Mem.") 31, ECF No. 40. This suggests, not that Zelik thought he had CGL insurance on all his properties, but instead that he was not aware of what kind of insurance he had.

Nor does GAIC provide clear and convincing evidence that Secure, Zelik's agent, believed that the six properties were covered by CGL policies. The most compelling evidence GAIC offers of Secure's belief that Zelik had underlying CGL policies is its repeated affirmations that Zelik did have CGL insurance. However, this evidence must be considered together with GAIC's own assertion that "Secure has admitted that it was its practice to no[t] request and review primary policies . . . when applying for umbrella coverage on behalf of insureds," suggesting Secure itself was not aware of the nature of the underlying insurance.

Taken in light of this admission, Zelik's affirmations, made through Secure, do not constitute the sort of clear and convincing evidence of a mutual mistake needed to overcome the "heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties" Chimart Assocs. v. Paul, 66 N.Y.2d 570, 574, 489 N.E.2d 231 (1986).

Even if GAIC had adduced clear and convincing evidence of a mutually mistaken belief, GAIC further fails to adduce evidence that reforming the contract to exclude the six improperly insured properties would "embody the true agreement as mutually intended." George Backer Mgmt. Corp., 46 N.Y.2d at 219. In order to reform the contract to exclude the six properties, GAIC would need to show that both parties intended that the Umbrella Insurance Policy would not cover properties that lacked underlying CGL policies. While GAIC has adduced evidence that this was GAIC's intention, GAIC has failed to adduce clear and convincing evidence that this was Zelik's intention. To demonstrate Zelik's intent, GAIC only offers Zelik's testimony "that had he known of the requirement, he would have ensured that the proper primary commercial general liability policies had been set in place." GAIC SJ Mem. 31-32. Even taken in the light most favorable to GAIC, this evidence is at most limited support for the proposition that Zelik did not intend the

Umbrella Insurance Policy to cover all of his properties when he entered into it. This evidence is not of the clear and convincing nature needed to overcome the presumption against reformation.

Ultimately, GAIC has not adduced clear and convincing evidence of a mutual mistake warranting reformation. Neither has it established that removing the six properties that lacked underlying CGL policies would better reflect both parties' intent, rather than simply GAIC's intent. The Court thus grants Zelik's motion for summary judgment dismissing GAIC's reformation claim, and denies GAIC's motion for summary judgment on this same claim.

c. Application of the Umbrella Insurance Contract

In the event that both its rescission and reformation claims fail, GAIC makes a final argument that the Umbrella Insurance Policy, even as written, does not cover damages arising from the Hodges Lawsuit. GAIC argues that one of two provisions of the policy, either a "business activities exclusion" or a "non-business activities exclusion," operates to exclude the Hodges incident from coverage. Zelik cross-moves for summary judgment, arguing that neither of these exclusions applies, and that GAIC's failure to pay for the incident constitutes a breach of contract. The Court denies both parties' motions for summary

21

judgment because a material dispute remains as to whether either exclusion applies to the Hodges incident.

GAIC first argues that a "business activities exclusion" bars coverage of the incident. This "business activities exclusion" is actually a combination of two provisions, one from the Allstate policy, and one from the Umbrella Insurance Policy. The Umbrella insurance policy provides that there is no coverage for "bodily injury or property damage . . . except to the extent that such insurance is provided by [an underlying] policy . . . and for no broader than coverage is provided by such policy." JA, Exh. 29, GAIC01361. In this case, the underlying Allstate policy contains the following provision related to bodily injury and property damage: "We do not cover bodily injury or property damage arising out of the past or present business activities of an insured person." JA, Exh. 53, at GAIC 1442, Excl. 9 (emphasis in original, indicating defined terms). GAIC argues that these clauses, taken together, bar coverage of the Hodges incident because Zelik was engaged in business activities -- namely investment -- at 467 Bushwick Avenue. Zelik, who is a professional real estate investor, does not contest that he was engaged in business activities in the sense of holding 467 Bushwick Avenue as an investment property, but nonetheless argues that GAIC may not enforce the business activities exception.

22

Zelik first argues that GAIC does not have standing to assert the business activities exception because it is in the Allstate policy, and the Umbrella Insurance Policy does not expressly adopt the terms of the Allstate policy. Zelik argues, in other words, that the Umbrella Insurance Policy does not properly follow form to the coverages provided in the Allstate policy. "A follow form excess policy incorporates by reference the terms of the underlying policy and is designed to match the coverage provided by the underlying policy." Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co., No. 08 CIV. 3604(BSJ), 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) (internal quotation marks and citations omitted). A follow form exclusion, like any other insurance exclusion, "must be specific and clear in order to be enforced." Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 311, 476 N.E.2d 272 (1984).

Despite Zelik's arguments to the contrary, the Umbrella Insurance Policy follow form provision is both specific and clear, and thus valid. It provides that "this insurance does not apply to . . . any 'bodily injury' or 'property damage'" "except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy." JA, Exh. 29, GAIC01361. Indeed, it specifically indicates that it is a "follow form" policy. Id. Even under the "strict and narrow

23

construction" afforded exclusions, this language clearly incorporates the Allstate policy's terms related to bodily injury and property damage coverage. Beazley Ins. Co., Inc. v. ACE Am. Ins. Co., et al., 197 F. Supp. 3d 616, 623 (S.D.N.Y. 2016), aff'd sub nom. Beazley Ins. Co., Inc. v. ACE Am. Ins. Co., 880 F.3d 64 (2d Cir. 2018). GAIC may thus enforce the terms of Allstate's business exclusion.

Given GAIC has standing to assert the business activities exclusion, it argues that as a matter of logic the Umbrella Insurance Policy cannot cover the Hodges incident. This is because the Umbrella Insurance Policy also has a non-business activities exclusion excluding "[a]ny liability for or arising out of any domestic or non-business activities." JA, Ex. 29, GAIC01381. Since, logically, the Hodges incident must have arisen from Zelik's business activities or from his non-business activities, the Umbrella Insurance Policy could not have covered it, or so GAIC argues.

GAIC, however, assumes that "business activity" carries the same meaning in both the Umbrella Insurance Policy and the Allstate homeowner's policy. Given the very different purposes of an Umbrella Insurance Policy designed for commercial activity and a homeowner's policy designed for non-commercial activity, it is far from evident that "business activity" means the same thing in both contexts. If, for example, one purchased a home

that one occupied but that one intended to eventually "flip" for profit, no one could reasonably argue that one's homeowner's policy did not cover an accident on the property because the ownership was a "business activity" under the meaning of that term in a homeowner's policy.

Furthermore, in any case, it is not evident that Zelik's passive investment in 467 Bushwick Avenue qualifies as a "business activity" under either policy definition. Under New York law, "when the meaning of [a] contract is ambiguous . . . a question of fact is presented which cannot be resolved on a motion for summary judgment." LaSalle Bank Nat.·Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005). Accordingly, the Court denies both parties' motions for summary judgment on the interpretation of the Umbrella Insurance Policy as written.

d. Attorney's Fees

Finally, Zelik moves for summary judgment finding GAIC liable for his attorneys' fees incurred in this action. Under New York law, "an insured who is 'cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations,' and who prevails on the merits, may recover attorneys' fees incurred in defending against the insurer's action." See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 3 N.Y.3d 592, 597 (2004) (quoting Mighty Midgets,

Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 21-22 (1979)).

Because the merits of Zelik's claim are unresolved, the Court cannot determine whether attorney's fees are warranted. Zelik's motion for summary judgment on this claim is thus denied.

## V. Secure's Motion for Summary Judgment Against Zelik

Secure moves for summary judgment against Zelik on the causes of action asserted in his third-party complaint. Zelik's complaint alleges a "broker malpractice/negligence" claim, and a breach of contract claim. For the reasons stated below, the Court denies Secure's motion for summary judgment in its entirety.

### a. Malpractice and Negligence Claims

Secure first argues that the Court should grant summary judgment against Zelik on his broker malpractice claim because, it contends, New York law does not allow professional malpractice claims against brokers. Secure, however, cites no authority directly standing for this proposition. Instead, it primarily relies on a case holding that insurance brokers are not "professionals" for purposes of applying a relevant New York statute of limitations. See Chase Sci. Research, Inc. v. NIA Grp., Inc., 96 N.Y.2d 20, 30 (2001). The case that comes closest to supporting Secure's argument that malpractice claims against brokers are invalid as a matter of law did so in dicta that relied on this same case. See Busker on the Roof Ltd. P'ship v.

26

Warrington, 283 A.D.2d 376, 376 (App.Div.2001) (citing Chase, 96 N.Y.2d at 30). Such scant authority is not enough to support summary judgment against Zelik on its broker malpractice claim.

Secure also appears to argue that Zelik's malpractice and negligence claims cannot stand because Secure owes Zelik no fiduciary duty. While it may be true that brokers do not owe their clients any fiduciary duties as a matter of law, Chase, 96 N.Y.2d at 30, Zelik's claim does not hinge upon the existence of a fiduciary duty. Rather, Zelik argues that Secure has breached its "common-law duty to obtain requested coverage for [its] clients within a reasonable time or inform the client of the inability to do so." Murphy v. Kuhn, 90 N.Y.2d 266, 270 (1997). It is well established that such a duty to exercise "reasonable diligence" in insurance procurement exists, see Baseball Office of Com'r v. Marsh & McLennan, Inc., 295 A.D.2d 73, 79 (2002), and that a broker who "negligently fails to procure a policy stands in the shoes of the insurer and is liable to the insured." Soho Generation of New York, Inc. v. Tri-City Ins. Brokers, Inc., 256 A.D.2d 229, 231 (1998). Secure's extended argument that it owes Zelik no fiduciary duty thus does nothing to undermine Zelik's malpractice and negligence claims.

As a final argument supporting summary judgment against Zelik on his first cause of action, Secure claims that there is no dispute that it did not breach its duty to exercise

27

reasonable diligence in securing the Umbrella Insurance Policy. Zelik, however, has adduced evidence that could cause a reasonable jury to find to the contrary. For example, Zelik asked Secure to obtain umbrella coverage for all of his properties, including 467 Bushwick Ave. JA Exh. 59, at 411-416. If GAIC ultimately succeeds on any of its claims that the Umbrella Insurance Policy does not cover the Hodges incident, Secure would have failed to do just this. Further, Zelik offers evidence that he provided Secure with the underlying policy numbers of his properties, JA Exh. 60, ostensibly putting Secure on notice that 467 Bushwick Ave had an underlying homeowner's insurance policy. The Court thus finds that Zelik has adduced evidence sufficient to preclude summary judgment against him on his negligence and malpractice claim.

b. Breach of Contract Claim

Secure next moves for summary judgment against Zelik on his breach of contract claim. It argues that there is no enforceable contract between Zelik and Secure because Secure received no consideration for its brokerage services. This argument is unavailing.

Consideration sufficient to create a contract "consists of either a benefit to the promisor or a detriment to the promise." Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 464 (1982). Here, Zelik asserts that the commissions Secure received as a result

of its brokerage services constituted such a benefit. Secure does not dispute that it received such commissions, but argues that a commission paid by an insurance carrier to a broker cannot constitute consideration to support a contract between an insurance applicant and a broker. Secure, however, offers no case law supporting this proposition. First, it cites Arden v. Freydberg, 9 N.Y.2d 393 (1961), which simply holds that a contract is not formed when a policyholder asks a broker to arrange an insurance plan but ultimately elects not to buy it. This case is irrelevant to the present issue. Second, Secure cites Vista Food Exch., Inc. v. BenefitMall, 138 A.D.3d 535, 536 (N.Y. App. Div. 2016), which held that a payment by a third-party may sometimes be too remote a benefit to constitute consideration. There is evidence that the benefit was not so remote here. Indeed, Secure appears to have received its commissions as the direct result of Zelik's agreement to obtain insurance through Secure.

Furthermore, there is evidence in the record that Secure received even more than commissions for its brokerage services here. In a deposition, one of Secure's representatives testified that Zelik entered into a service fee agreement with Secure in at least some years. JA Exh. 6 at 103:11-105:9. Taken in the light most favorable to Zelik, this suggests that Secure received a fee directly from Zelik in addition to commissions

29

for its brokerage services. Given there is evidence that Secure received both commissions and a service fee as a "benefit" in exchange for its brokerage services, the Court denies Secure's motion for summary judgment on Zelik's contract claim insofar as it is premised on a lack of consideration.

c. Fraud

Secure next argues that the Court should grant summary judgment against Zelik on both his tort and contract claims because Zelik's and Secure's business relationship was based on fraud. The Court need not delve deeply into the details of Secure's legal argument because a clear factual dispute remains as to whether Zelik made any fraudulent misrepresentations, or any misrepresentations at all, to Secure. Secure claims that "Zelik at a minimum lied and misrepresented about his residence in order to get cheaper HO policies as opposed to commercial insurance." Secure Insure's Mem. of Law in Support of Summary Judgment 34, ECF No. 37. Secure, however, cites to no part of the record in making this claim, and Zelik "vehemently denie[s]" it. Zelik's Mem. of Law in Opp. to Secure's Mot. for Summary Judgment 11, ECF 50. Given that the factual question of whether Zelik engaged in fraud is by no means resolved, the Court denies summary judgment on this ground.

d. Proximate Cause

Secure next asserts that its actions were not the proximate cause of Zelik's lack of coverage. Although Secure's theory is fairly opaque, it appears to proceed as follows: First, GAIC could prevail against Zelik on a different theory than it currently asserts, to wit, that Zelik's underlying policies lacked the minimum limits required by the Umbrella Insurance Policy. Second, Zelik was aware that his policies lacked the minimum limits, and thus any lack of coverage was not caused by Secure. Third, if the Court could find for GAIC on this alternative theory, Secure was not the proximate cause of Zelik's loss.

Although there are problems with each step of this argument, the most significant is that GAIC simply has not alleged this alternative theory against Zelik. Secure's argument is thus entirely speculative. The Court thus denies Secure's motion for summary judgment on this ground.

e. Attorney's Fees

Finally, Secure moves for summary judgment against Zelik on his claim for attorneys' fees. Zelik seeks from Secure all legal fees and costs he has incurred in responding to Great American's rescission action and his associated counterclaim. Under New York law, an insured may recover from an insurance broker only "to the extent it could have done so against the insurer." Chase Manhattan Bank, N.A. v. Each Individual Underwriter Bound to

31

Lloyd's Policy No. 790/004A89005, 258 A.D.2d 1, 4 (1st Dept. 1999). As previously noted, it will not be clear whether Zelik may recover attorneys' fees from GAIC until the merits of his claim are resolved. U.S. Underwriters Ins. Co., 3 N.Y.3d at 597 (2004). Thus, the Court cannot yet determine whether Zelik may recover attorneys' fees from Secure, and Secure's motion for summary judgment must therefore be denied.

VI.  Conclusion

For the foregoing reasons, Zelik's motion for summary judgment dismissing GAIC's rescission claim is hereby granted. The rest of Zelik's motion for summary judgment, and the entirety of GAIC's and Secure's motions for summary judgment are hereby denied.

SO ORDERED.

Dated:    New York, NY

January __3__, 2020                    JED S. RAKOFF, U.S.D.J.