**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GREAT AMERICAN INSURANCE COMPANY,

                    Plaintiff / Counter-Defendant,

           -against-

JOSEPH ZELIK,

                    Defendant / Counter-Plaintiff,

JOSEPH ZELIK,

                    Third-Party Plaintiff,

           -against-

SECURE INSURE BROKERAGE INC. f/k/a
INSURE SECURE INC.,

                    Third-Party Defendant

**Case No.: 1:19-cv-01805-JSR**


**Hon. J. Rakoff**

**MEMORANDUM OF LAW**

**BY THIRD-PARTY DEFENDANT SECURE INSURE FOR RECONSIDERATION OF
THREE ISSUES OF THE DECISION BY THE COURT ON SUMMARY JUDGMENT**

**KEIDEL, WELDON & CUNNINGHAM, LLP**
Howard S. Kronberg, Esq.
*Attorneys for Third Party Defendant,*
*SECURE INSURE BROKERAGE INC. f/k/a*
*INSURE SECURE INC.,*
925 Westchester Avenue, Suite 400
White Plains, NY 10604
Tel:    (914) 948-7000
Fax:    (914) 948-7010

## TABLE OF CONTENTS

**TABLE OF CONTENTS**.................................................................................................. ........... i

**TABLE OF AUTHORITIES** ...........................................................................................ii, iii

**THE SUMMARY JUDGMENT DECISION- RELEVANT PARTS** ...................................... 1

**LEGAL ARGUMENTS** ....................................................................................................... 2

**POINT I**- THE STANDARD ON A MOTION FOR RECONSIDERATION ...............................
........................................................................................................................................ 2

**POINT II**- IN DENYING SUMMARY JUDGMENT AGAINST GREAT AMERICAN ON
PARTIAL RECISSION BASED ON QUESTIONS OF FACT THE COURT
MISUNDERSTOOD AND OVERLOOKED THAT THE ARGUMENT OF ZELIK WAS THAT
EVEN IF THERE WAS A MATERIAL MISREPRESENTATION UNDER THE UNDISPUTED
FACTS AND LAW ON EQUITY, GREAT AMERICAN WOULD NOT BE ENTITLED TO
SUCH EQUITABLE RELIEF ......................................................................................... 3

**POINT III**- TO DETERMINE THE INTENT OF THE PARTIES THE COURT NEED ONLY
LOOK TO THE CONTRACT OF ISSUANCE THE PARTIES TESTIMONY IS IRRELEVANT
WHEN THE CONTRACT IS CLEAR..............................................................................
........................................................................................................................................ 5

**POINT IV**- THE LAW ALLOWS AN INSURED TO RECOVER ITS DEFENSE COSTS
WHEN SUED BY ITS LIABILITY CARRIER ONLY BECAUSE THE CONTRACT OF
INSURANCE SPECIFICALLY PROVIDES FOR THAT AS THE DUTY TO DEFEND; AS
SECURE INSURE IS NOT A PARTY TO THAT CONTRACT OF INSURANCE IT CAN
NEVER BE HELD TO A CONTRACTUAL OBLIGATION AND THUS, CAN NEVER BE
LIABLE FOR LEGAL FEES TO ITS INSURED ............................................................
........................................................................................................................................ 8

**CONCLUSION** ..................................................................................... 14

i

# TABLE OF AUTHORITIES

## CASES

Adams v. United States, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)................................................... 2

American Motorist Ins. Co. v. Salvatore, 102 A.D.2d 342, 346 (1st Dept., 1984) ............... 12, 13

Ameriprise Ins. Co. v. Hampton, 2018 N.Y. Misc. LEXIS 3475 at *1, *22 (Sup. Ct. New York
    Cty. 2018) ......................................................................................................... 10

Andriaccio v. Borg & Borg, 198 A.D.2d 253 (2nd Dept., 1993). ................................................ 12

Bovis Lend ease LMB, Inc. v. Great Am. Ins. Co., 53 A.D.3d 140, 145 (1st Dept. 2008)............ 9

Chapel v. Mitchell, 84 N.Y.2d 345, 349 (1994) ............................................................................ 9

Chase Manhattan Bank, N.A. v. Each Individual Underwriter Bound to Lloyd's Policy No.
    790/004A89005, 258 A.D.2d 1 (1st Dept., 1999)................................................................ 8,9,11

Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 652 (1993))................................. 7

Cosmos, Queens Ltd. v. Matthias Saechang Im Agency, 74 A.D.3d 682, 683-84 (1st Dept. 2010)
    ....................................................................................................................................... 13

Gilbane Bldg. Co./TDX Const. Corp. v. St. Paul Fire et al, 143 A.D.3d 146 (1st Dept. 2016) ..... 9

Green v. Green, 51 N.Y.2d 627 (1980)......................................................................................... 8

Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (2002) ......................................................... 6

Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487 (1989)........................................ 8

Hunt v. Sharp, 85 N.Y.2d 883 (1995)........................................................................................... 9

Jasam Realty Corp. v. Fid. & Guar. Ins. Underwriters, Inc., No. CV 13-2333, 2013 WL 3786298
    (E.D.N.Y. July 11, 2013) ................................................................................................. 10

Johnson v. Travelers, 269 N.Y. 401, 407 (1936)......................................................................... 6

Kass v. Kass, 91 N.Y.2d 554, 566 (1998).................................................................................... 6

Kinns v. Schulz, 131 A.D.2d 957, 959 (3d Dept. 1987) ................................................. 12

Kolel Beth Yechiel Mechil of Tartikov Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) ........................................................................................................................... 3

Liberty Surplus Ins. Corp. v. Segal Co., 420 F.3d 65, 67 (2d Cir. 2005) ..................................... 10

Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 22 (1979) ......................................... 8

Milgrim v. Royal & SunAlliance Ins. Co. 75 A.D.3d 587, 589 (2nd Dept., 2010) ................ 12, 13

New York Cent. Mut. Fire Ins. Co. v. Ward, 38 AD3d 898, 899 (2nd Dept 2007) .........................
.................................................... …………………………………………………………6

Oot v Home Ins. Co. of Ind., 244 AD2d 62, 66 (4th Dept. 1998) .................................................. 6

Sheehan v. City of New York, 40 N.Y.2d 496, 501 (2008) ............................................................. 13

Shrader v. CSX Transp., 70 F.3d 255, 257 (2d. Cir. 1995) ............................................................ 2

Shutts v. First Unum Life Ins. Co., 310 F.Supp.2d 489, 497 (N.D. N.Y. 2004) ........................... 7

United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229, 232 (1986) ................................. 6, 8

US Pack Network Corp. v Travelers Prop. Cas. 42 A.D.3d 330 (1st Dept., 2007) ...................... 12

Weissberg v. Royal Ins. Co., 240 A.D.2d 733 (2nd Dept. 1997) ................................................. 13

White v. Continental Cas. Co., 9 NY3d 264, 267 (2007) ............................................................... 7

Willard v. Tayloe, 75 U.S. 557, 567 (1886) .................................................................................. 4

**LOCAL RULES**

S.D.N.Y. Local Civil Rule 6.3 .......................................................................................... 2

**STATUTES**

NY Ins. Law §101(a)(1) .................................................................................................... 9

## THE SUMMARY JUDGMENT DECISION - RELEVANT PARTS

**A.**     **Undisputed Facts and Factual Findings**

Based on the agreed upon Exhibits contained in the Joint Appendix, the parties' FRCP Rule 56 Statements of Material Facts and responses thereto and this court's findings at "II. Undisputed Material Facts" of the summary judgment decision (**Exhibit "A"** P. 2, ¶3 to P.5), the following was and is not in dispute:

1)     An accurate copy of the subject policy was **Exhibit "29"** to the Appendix and there was no dispute as to the terms and conditions therein, meaning it said what it said.

2)     Great American required $1M of underlying insurance. (**Exhibit "A"** P. 3, ¶1, L. 2).

3)     Allstate provided $1M of underlying insurance for the Hodges claim/action. (Appendix **Exhibit "53"**, Pp. 7 & 43 of 75 and **Exhibit "A"** P. 5, L. 2).

4)     Allstate defended Zelik in the Hodges action under that policy. (**Exhibit "A"** P. 4, ¶2, L. 4)

5)     Allstate tendered its $1M policy limit to settle Hodges. (**Exhibit "A"** P. 5, L. 2).

6)     The premium attributable to all 5 Allstate covered locations, the subject Hodges location included, for the period from 2011 to 2019 was *only $303.99* as per the motion by Great American and Order of this court to deposit that sum into court. (**8-29-19 ECF Doc. #: 29**)

**B.**     **Legal Rulings**

The court granted summary judgment to Zelik and against Great American dismissing the "Reformation" cause of action. (**Exhibit "A"** P. 17-21.)

The court denied summary judgment dismissing the "Partial Rescission" claim holding that there were **(1)** questions of fact as to the materiality of the misrepresentations, (**Exhibit "A"** P. 10, ¶1, L. 1&2.), and even if it was, there were material **(2)** questions of fact as to the

1

divisibility/severability, or not, of the subject policy. (**Exhibit "A"** P.11, ¶1, L. 2) As to the latter the court held that the questions of fact as to "intent" require a trial based on the competing extrinsic evidence submitted by Zelik and Great American. (**Exhibit "A"** P.12, ¶2 and P. 13, ¶1).

As to the broad argument made by Zelik and Secure Insure that the law on the equitable remedy of partial rescission allows the court as  matter of law to deny such relief under these facts, the court again found questions of fact precluding summary judgment on that issue.  (**Exhibit "A"** P.17, L.1- 4)

Finally, the court denied that part of Secure Insure's motion seeking summary judgment dismissing the cause of action by Zelik for legal fees as follows:

> "Under New York law, an insured may recover from an insurance broker only "to the extent it could have done so against the insurer." <u>Chase Manhattan Bank, N.A. v. Each Individual Underwriter Bound to Lloyd's Policy No. 790/004A89005</u>, 258 A.D.2d 1, 4 (1st Dept. 1999). As previously noted, it will not be clear whether Zelik may recover attorneys' fees from GAIC until the merits of his claim are resolved. <u>U.S. Underwriters Ins. Co.</u>, 3 N.Y.3d at 597 (2004). Thus, the Court cannot yet determine whether Zelik may recover attorneys ' fees from Secure, and Secure 's motion for summary judgment must therefore be denied."

(**Exhibit "A"** P.31, ¶3 to P. 32)

## <u>LEGAL ARGUMENTS</u>

### <u>POINT I</u>

### <u>THE STANDARD ON A MOTION FOR RECONSIDERATION</u>

We are aware of the strict limits of a motion for reconsideration under S.D.N.Y. Local Civil Rule 6.3. "The only proper ground on which a party may move to reargue an unambiguous order is that the court overlooked 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result reached by the court." <u>Adams v. United States</u>, 686 F. Supp. 417, 418 (S.D.N.Y. 1988). See also <u>Shrader v. CSX Transp.</u>, 70 F.3d 255, 257 (2d.

2

Cir. 1995). (A litigant seeking to prevail on a motion for reconsideration must "point to controlling decisions or data that the court overlooked—matters, in other words, <u>that might reasonably be expected to alter the conclusion reached by the court</u>.")(*Emphasis added*).

The Second Circuit has given instances where reconsideration is warranted. Such circumstances are, "when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest justice." <u>Kolel Beth Yechiel Mechil of Tartikov Inc. v. YLL Irrevocable Tr.</u>, 729 F.3d 99, 104 (2d Cir. 2013).

Secure Insure makes the instant motion based on:

    (1)    The need to correct clear errors and

    (2)    To prevent manifest injustice,

...both which we reasonably expect to alter the conclusion reached by the court and founded on controlling law.

## POINT II

**IN DENYING SUMMARY JUDGMENT AGAINST GREAT AMERICAN
ON PARTIAL RESCISSION BASED ON QUESTIONS OF FACT
THE COURT MISUNDERSTOOD AND OVERLOOKED
THAT THE ARGUMENT OF ZELIK WAS THAT
*EVEN IF THERE WAS A MATERIAL MISREPRESENTATION*
UNDER THE  UNDISPUTED FACTS AND LAW ON EQUITY,
<u>GREAT AMERICAN WOULD NOT BE ENTITLED TO SUCH EQUITABLE RELIEF</u>**

There is a part of the decision in which the court seems to treat our argument on the equities of the case as to <u>Hodges</u>, (that Great American is in no different position with the $1M of Allstate coverage as it would have been had there been $1M of CGL coverage as to <u>Hodges</u>), as an element of whether or not the misrepresentation was "material". (**Exhibit "A"** P.6, L. 2 to P. 7 and top of P. 10). <u>For the sake of the motion we assumed, arguendo, that it was</u>.

3

In addition to our moving arguments on this issue, in our Reply to Great American's Opposition to Secure Insure's summary judgment motion we specifically highlighted that EVEN IF the misrepresentation was "material", given the law on granting the equitable remedy of rescission, (partial or not), as a matter of law Great American is not entitled to such relief as to Hodges.

> "Second, and more important, is that **assuming arguendo the**
> **representation as to the Hodges policy was material**, that does
> not automatically equal rescission. (Yes, despite some cases
> suggesting that is the outcome.) Our position is that the "material"
> element only gets you to the discussion of what is the right equitable
> remedy, if any, and NOT rescission as a *fait accompli*, which is what
> Great American seeks."

(ECF Doc. #:8, filed 11/21/19, P.2, ¶2 clarifying and relating back to our moving papers, ECF Doc. #: 37 filed 10/31/19 Memo of Law "POINT III" at P. 8 et seq.)

Our position is simple and based on the undisputed facts as set forth above and as argued in our moving papers. Given that Great American wanted a (1) $1M of primary liability insurance to its umbrella policy, and got it, (2) given that it wanted the underlying carrier to defend their joint insured, and got it, given that (3) Allstate tendered its full $1M and (4) given that the amount of premium at issue was, even if not zero, negligible to the subject location for the single policy year at issue, Great American is simply not entitled to the equitable relief of partial rescission as the monumental harm to Zelik in losing millions of dollars in coverage, far outweighs the non-existent harm to Great American under these undisputed facts.

As we quoted at oral argument, the United States Supreme Court in Willard v. Tayloe, 75 U.S. 557, 567 (1886), summed up exactly why Great American is not entitled to partial rescission as a matter of law even if the mis-representation was material:

"In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, **that it will sub-serve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties.** It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be  perfect. **It must also appear that the specific enforcement will work no hardship or injustice, for if that result would follow, the court will leave the parties to their remedies at law,** unless the granting of the specific relief can be accompanied with conditions which will obviate that result.
(*Emphasis added*).

As there seemed to have been a misunderstanding by the court, (a clear error), that our equitable argument <u>did not assume a material misrepresentation</u>, which it did thereby negating the need for a trial as to any question of fact as to materiality, and since the law rejects the equitable relief sought here based on the undisputed facts and the immense hardship it would cause to Zelik where Great American is in the same position it would have been anyway, to prevent manifest injustice the court should reconsider its decision and grant summary judgment dismissing the partial rescission cause of action.

## POINT III

### TO DETERMINE THE INTENT OF THE PARTIES
### THE COURT NEED ONLY LOOK TO THE CONTRACT OF INSURANCE
### <u>THE PARTIES TESTIMONY IS IRRELEVANT WHEN THE CONTRACT IS CLEAR</u>

We read the court's denial of  summary judgment dismissing the "Partial Rescission" cause of action as based on the court's finding that questions of fact had to be resolved at trial as to the intent of the parties as to the severability/divisibility of the contract of insurance. (**Exhibit "A"** P.11, ¶1, L. 2) We also read the decision as finding questions of fact as to the intention of the parties requiring a trial and the parties testimony based on the competing extrinsic evidence

submitted by Zelik and Great American. (**Exhibit "A"** P.12, ¶2 and P. 13, ¶1). We view this as a clear error in the analysis.

The principles to be used in construing insurance contracts are the same as those used in construing other types of contracts. Johnson v. Travelers, 269 N.Y. 401, 407 (1936). A contract of insurance is no different from any other contract and must be construed in a fair and reasonable manner and special rules such as liberal construction in favor of the insured and against the insurer who drew the contract apply. New York Cent. Mut. Fire Ins. Co. v. Ward, 38 AD3d 898, 899 (2nd Dept 2007).

The best evidence of what the parties to an agreement intended is the language of the agreement itself. See Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (2002). Furthermore, in construing an insurance contract, the "parties' intent is to be ascertained by examining the policy as a whole, and by giving effect and meaning to every term of the policy" not by what the parties said that they intended. Oot v Home Ins. Co. of Ind., 244 AD2d 62, 66 (4th Dept. 1998). Interpretation of a contract is to be determined by looking within the four corners of the document and not to extrinsic sources. Cf Kass v. Kass, 91 N.Y.2d 554, 566 (1998). "[W]ords and phrases are to be understood in their plain, ordinary, and popularly understood sense, rather than in a forced or technical sense". Oot, 244 AD2d at 66.

"Where the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement". United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229, 232 (1986). An insurance contract language is unambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion, whereas contract language is ambiguous where it is capable of more than one meaning

6

when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement. Shutts v. First Unum Life Ins. Co., 310 F.Supp.2d 489, 497 (N.D. N.Y. 2004). Similarly, a contract is unambiguous if the "language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion." White v. Continental Cas. Co., 9 NY3d 264, 267 (2007).

We also think that given the interpretation of the policy by Great American seeks to deprive Zelik of coverage similar to the result of an exclusion, the burden Great American has is the same. (To "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case". Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 652 (1993)).

As we set forth in our papers, an examination of the subject contract of insurance shows no language, term, condition or provision that would support that the "intent of the parties", as gleaned from the contract itself, supports the severability of the locations as if they were or could be separately insured. ECF Doc. #:8, filed 11/21/19, P.6 "Conclusion" to P.7). The contract language is controlling.

We pointed out that the only example of what could be argued as "severability" is that part of the policy called "Separation of Insureds" which does allow the policy to treat each "Insured" as separately insured, (except for limits). (Appendix **Exhibit #29**, page 18 of 62). This indicates that when Great American wanted to create the severability it now asserts exists, it knew how to do it and did so, but just NOT as to the covered locations indicated. Thus, as a matter of law, Great American did not intend, nor does the contract permit, severability of locations, which was clearly

not intended. <u>United States Fid. & Guar. Co.</u>, 67 N.Y.2d at 232 (A contract is to be construed as written and "courts should refrain from rewriting the agreement").

As there seemed to have been a misunderstanding by the court, (a clear error), that the testimony of the parties at trial was needed to sus out the intent of the parties when the law defaults and is limited to the plain language of the contract for such a determination. To prevent manifest injustice the court should reconsider its decision and grant summary judgment dismissing the partial rescission cause of action.

POINT IV

**THE LAW ALLOWS AN INSURED TO RECOVER ITS DEFENSE COSTS WHEN SUED BY ITS LIABILITY CARRIER ONLY BECAUSE THE CONTRACT OF INSURANCE SPECIFICALLY PROVIDES FOR THAT AS THE DUTY TO DEFEND**<br>\*  \*  \*<br>**AS SECURE INSURE IS NOT A PARTY TO THAT CONTRACT OF INSURANCE IT CAN NEVER BE HELD TO A CONTRACTUAL OBLIGATION<br><u>AND THUS, CAN NEVER BE LIABLE FOR LEGAL FEES TO ITS INSURED</u>**

We read the Third-Party Complaint as Zelik seeking to recover his legal fees *(a)* for defending the First-Party rescission action and *(b)* for prosecuting Secure Insure as a Third-Party Defendant. The decision of the court read as allowing both claims to go forward. That is a clear error.

First, not even the seminal case of <u>Mighty Midgets, Inc. v. Centennial Ins. Co.</u>, 47 N.Y.2d 12, 22 (1979), (cited by the First Department in <u>Chase Manhattan Bank, N.A. v. Each Individual Underwriter Bound to Lloyd's Policy No. 790/004A89005</u>, 258 A.D.2d 1 (1st Dept., 1999) which was cited by this court in that part of the summary judgment decision denying dismissal of such claims, (**Exhibit "A"** P.31, ¶3 to P. 32)), stands for the proposition that an insured can recover legal fees for SUING its insurance broker. See <u>Hooper Assocs., Ltd. v. AGS Computers, Inc.</u>, 74 N.Y.2d 487 (1989); see also <u>Green v. Green</u>, 51 N.Y.2d 627 (1980); That part of Secure Insure's

8

motion should have been granted.

As to the recovery of Zelik's defense costs, they can never be recovered against the broker either under all prevailing authority, <u>Chase Manhattan</u> included. Id at 4. Here is why and how the court erred.

We read the summary judgment decision on this point as suggesting that a question of fact has to be resolved about whether or not the Great American policy covers the Zelik-Hodges claim in order to determine if Zelik can recover legal fees against Secure Insure. ("Under New York law, an insured may recover from an insurance broker only 'to the extent it could have done so against the insurer.'". **Exhibit "A"** P.31, ¶3, L. 2).

First, we all agree that New York follows the "American Rule" which states that the prevailing litigant ordinarily cannot collect its reasonable attorney's fees from its unsuccessful opponents except *(1)* when authorized by statute, rule or regulation or *(2)* **where the parties agree to such in a contract**. See <u>Hunt v. Sharp</u>, 85 N.Y.2d 883 (1995); <u>Chapel v. Mitchell</u>, 84 N.Y.2d 345, 349 (1994). Zelik does not argue for a statutory exception leaving only the contractual provision exception.

A liability insurance policy is a contract, and a bi-partite one at that, where the only parties thereto are the Insured, (Zelik), and the Insurer, (Great American). <u>Gilbane Bldg. Co./TDX Const. Corp. v. St. Paul Fire et al</u>, 143 A.D.3d 146 (1st Dept. 2016) ("[a]n insurance policy is a contract between the insurer and the insured" (<u>Bovis Lend ease LMB, Inc. v. Great Am. Ins. Co.</u>, 53 A.D.3d 140, 145 [1st Dept. 2008])." *See also* NY Ins. Law §101(a)(1). The insurance broker, (Secure Insure), is never a party to that contract of insurance.

In accordance with the American Rule the ONLY reason that an insured can recover its **defensive** legal fees from its own liability carrier when sued by that carrier is *(1)* because the actual

9

contract of insurance specifically provided for that in the Duty to Defend provision of the insuring agreement and *(2)* because the liability insurer itself proximately caused its insured to be in a defensive posture by suing the insured.

The Court of Appeals in <u>Mighty Midgets</u> correctly read Centennial's policy as requiring it to reimburse Mighty Midgets for the cost of the defensive posture it was put in by Centennial's declaratory judgment action since the Duty to Defend was triggered on the very policy at issue. It is due to the existence of a Contractual Obligation specific to defense costs that entitles an Insured, in a defensive posture from its own Insurer, to recovery of those costs and fees if it wins.

> "The insured parties in Mighty Midgets and U.S. Underwriters Ins. were able to recover attorneys' fees because "**an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against an insurer's declaratory judgment action**" (<u>U.S. Underwriters Ins. Co.</u>, 3 N.Y.3d at 597-98."

<u>Ameriprise Ins. Co. v. Hampton</u>, 2018 N.Y. Misc. LEXIS 3475 at *1, *22 (Sup. Ct. New York Cty. 2018). (*Emphasis added*)

The Second Circuit agreed stating,

> "The reasoning behind the Mighty Midgets exception is that an **insurer's duty to defend extends to any action arising out of a covered event, including an action brought by the insurer to free itself from covering the event.** See <u>Aetna Cas. & Sur. Co. v. Dawson</u>, 84 A.D.2d 708, 709, 444 N.Y.S.2d 10, 12 (1st Dept. 1981), aff'd, 56 N.Y.2d 1022, 439 N.E.2d 398, 453 N.Y.S.2d 683 (1982), cited by <u>Emp'rs Mut.</u>, 75 F.3d 824, 824 See also <u>Mighty Midgets, Inc.</u>, 47 N.Y.2d at 21 (stating that the basis for attorneys' fees "find[s] support in the theory that an insurer's responsibility to defend reaches the defense of any actions arising out of the occurrence")."

<u>Liberty Surplus Ins. Corp. v. Segal Co.</u>, 420 F.3d 65, 67 (2d Cir. 2005) (*Emphasis added*); see also

<u>Jasam Realty Corp. v. Fid. & Guar. Ins. Underwriters, Inc.</u>, No. CV 13-2333, 2013 WL 3786298

(E.D.N.Y. July 11, 2013).

While this court cited <u>Chase Manhattan Bank, N.A. v. Each Individual Underwriter Bound to Lloyd's Policy No. 790/004A89005</u>, 258 A.D.2d 1 (1st Dept. 1999), the courts expressly rejected arguments that the insured should be entitled to attorneys' fees incurred in litigation against brokers. The problem is poorly used language by the First Department which this court seemed to find supportive of allowing the issue to go to trial as follows:

> "According to the dissent, the Shindler rule applies since Kuh/KBS's misrepresentation exposed Chase and Archer to earlier litigation with a third person, namely, Lloyd's. The problem with this reasoning is that as to Kuh/KBS, against whom indemnity is sought for an alleged misrepresentation vitiating the policy, Lloyd's is not a third party. In the face of an allegation of a broker's error or omission in failing to procure proper coverage, the broker, as noted, "stands in the shoes of the insurer as concerns liability to the insured." (Macon v Arnlie Realty Co., supra, 207 AD2d, at 270.) Allowing the recovery of attorneys' fees against the broker in this case, where neither Chase nor Archer, if successful, could recover the same from the insurer, Lloyd's, would violate the general rule against awarding attorneys' fees to the successful party in litigation."

> Id at 7.

As to <u>Chase Manhattan</u>, first that quoted section was introduced by the majority to discuss the position of the Dissent making the paragraph somewhat confused. Second, to the extent that the First Department was suggesting for a minute that an insurance broker could be held to have to perform a contract term in the policy of insurance, that is unheard of. Third, even internally the quoted does not make sense.

1.  If Great American owes legal fee reimbursement to Zelik for putting it in a defensive posture it will because the subject umbrella policy has a Duty to Defend and that duty was triggered, and

2.  Because Great American proximately caused that Duty to Defend to be triggered by suing Zelik.

3.      Secure Insure is not a party to the subject policy.

4.      Secure Insure thus has no duty to defend.

5.      Secure Insure did not proximately cause Zelik to be in a defensive posture because Great American sued Zelik not Secure Insure.

6.      Furthermore, if Great American does not OWE defense cost reimbursement to Zelik for the First Party action then, even by this court's own reasoning, neither would Secure Insure "Standing the Shoes" of Great American.

7.      So, again based on the court's own reasoning in the decision, if on the merits Great American owes defense costs, Secure Insure would not, and if it does not because the policy does not require it, then neither would Secure Insure. Thus, there is no need for a trial on any issue.

One final error needs to be addressed. That is the notion that the broker "Stands in the Shoes" of the carrier meaning, as implied in the summary judgment decision as gleaned from Chase Manhattan, that the insurance broker can be forced to take over the contractual obligations of the insurer. That is not the law.

The "Stands in the Shoes of the Insurer" doctrine on is often misunderstood and misapplied. Andriaccio v. Borg & Borg, 198 A.D.2d 253 (2nd Dept., 1993). It is a limitation on a broker's liability not a broadening of it. It means that a broker's liability is limited to that which the insurer would have sustained when the claim been presented. *See* American Motorist Ins. Co. v. Salvatore, 102 A.D.2d 342, 346 (1st Dept., 1984); Kinns v. Schulz, 131 A.D.2d 957, 959 (3d Dept. 1987); (The broker's liability is "limited to that which would have been borne by the insurer had the policy been in force."); Milgrim v. Royal & SunAlliance Ins. Co. 75 A.D.3d 587, 589 (2nd Dept., 2010); US Pack Network Corp. v Travelers Prop. Cas. 42 A.D.3d 330 (1st Dept., 2007).

It does not mean that the broker can be forced to fulfill the insurer's contractual obligations. Remember that a broker is sued for negligence and breach of contract that "contract" being the oral agreement to procure, not the policy. A broker is sued for damages the amount and extent of

12

which is limited to what the policy would have provided had it not been for the acts or omissions of the broker. American Motorists Ins. Co. v. Salvatore, 102 A.D.2d 342 (1st Dept. 1984); Weissberg v. Royal Ins. Co., 240 A.D.2d 733 (2nd Dept. 1997);

     It means, for example, that if a broker is liable to the insured for allowing the inclusion of an exclusion in a $1M liability policy that should not have been in the policy, (leaving the policyholder uninsured for a personal injury action), even if the personal injury damages against the policyholder are $2M, the broker's liability is limited to the $1M policy limit. It means, by example, if the broker caused a late notice denial by the carrier so that the policyholder is uninsured, IF the claim would have been denied anyway due to the application of an exclusion that was properly part of the policy, the broker is not liable as there would not have been coverage anyway. See Cosmos, Queens Ltd. v. Matthias Saechang Im Agency, 74 A.D.3d 682, 683-84 (1st Dept. 2010); see also Sheehan v. City of New York, 40 N.Y.2d 496, 501 (2008). In Milgrim v. Royal & SunAlliance Ins. Co. 75 A.D.3d 587, 589 (2nd Dept., 2010), it was alleged that the broker was negligent in obtaining insurance for the plaintiffs. Since the loss was not covered anyway, through no fault of the broker, the court held that the negligence of the broker "was not the proximate cause of the plaintiffs' damages."

     We are not aware of any court holding that a broker literally becomes a party to a contract of insurance to which it is a legal stranger. Since a broker is never a party to the contract of insurance it can never had a Duty to Defend and thus can never be liable for legal fees for the insured's defense of a suit by the carrier under the American Rule. Zelik is not entitled to legal fees from Secure Insure no matter the facts and thus summary judgment dismissing such claims are proper on this motion.

**<u>CONCLUSION</u>**

For all the reasons set forth hereinabove the court should reconsider its summary judgment decision and grant the relief as contained in the Notice of Motion as to which this court deems just, equitable and proper.

Dated:      White Plains, New York
             January 17, 2020

            **KEIDEL, WELDON & CUNNINGHAM, LLP**

            By:    ***Howard S. Kronberg***
                    Howard S. Kronberg, Esq.
                    *Attorneys for Third Party Defendant,*
                    *SECURE INSURE BROKERAGE INC. f/k/a*
                    *INSURE SECURE INC.,*
                    925 Westchester Avenue, Suite 400
                    White Plains, NY 10604
                    Tel:    (914) 948-7000
                    Fax:   (914) 948-7010

TO:    Mark R. Vespole, Esq.
        Nana K. Sarpong, Esq.
        **WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**
        *Attorneys for Great American Insurance Company,*
        *Plaintiff / Counter-Defendant*
        200 Campus Drive, Suite 400
        Florham Park, New Jersey 07932
        Tel:    (973) 624-0800
        Fax:   (973) 624-0808
        Mark.Vespole@wilsonelser.com
        Nana.Sarpong@wilsonelser.com

        Marshall N. Gilinsky, Esq.
        Grant E. Brown, Esq.
        **ANDERSON KILL P.C.**
        *Attorneys for Joseph Zelik, Defendant / Counter-Plaintiff, Third-Party Plaintiff*
        1251 Avenue of the Americas
        New York, New York 10020
        Tel:    (212) 278-1000
        Fax:   (212) 278-1733
        mgilinsky@andersonkill.com
        gbrown@andersonkill.com

14